Good morning, Chief Judge Sirica, and may it please the Court. My name is Peter Goldberger, and along with Attorney Anna Durbin, it's my privilege to represent Roderick Vosburgh, who is the appellant here, defendant below. I reserve two minutes for rebuttal. In the time available, I would like to try to discuss the suppression issue involving the lack of probable cause for the search warrant, the interrelated constructive amendment and insufficiency issue that focuses on Count 1, probably leave the other evidentiary issues to the brief unless the Court has questions. Mr. Vosburgh's apartment was searched under a warrant issued in late February of 2007 based on information concerning, as far as he was concerned as an individual or that location was concerned, information concerning a two-minute to four-minute sequence of events involving an attempt to access a video on the Internet, an unsuccessful attempt that had occurred four months earlier in late October of 2006. There was no substantial basis for the magistrate to conclude on these facts that there was probable cause to search that apartment in late February for items specified in that warrant which were variously described as instrumentalities, as evidence or contraband. There was a lot of inconsistency in that respect. The affidavit was fairly long, said a lot more than I just said, but there were no other facts that related to Mr. Vosburgh. The lack of probable cause for this warrant is particularly obvious because of the age of the individualized information, the four months. That is, it was stale. Staleness is not a separate issue, it just goes to probable cause. Because, and in this regard, the evidence is easy to see in comparison to three of this Court's cases. There was no evidence of continuing activity which was key to upholding the warrant in the Harvey case. There was no evidence of any activity other than a failed attempt. Insofar as this defendant was concerned, yes. That's right. Insofar as this defendant was concerned. Or this location, since it was a search warrant. Or this location. Or any location. But a device. A device, yes. That's right. But a device that could be traced in some way to the residents? Yes. And we conceded in the brief that there was probable cause to believe that the device had been through the IP address in that warrant. At trial it was contested that that didn't prove it beyond a reasonable doubt, but for A very similar case, Harvey, and yet it depended on the continuity to uphold that warrant. This case does not even involve the shred of recent weak information that the Court found sufficient to uphold the warrant in what it called a close case in Ritter, a case in which Judge Smith dissented and said there was a lack of probable cause because the solid information was stale. They are also a similar number of months old. What about Shields? Sorry? What about United States v. Shields, where we had, I think, a nine-month gap? The Court has never upheld a probable cause without evidence of the kind of crime. I'm not sure I remember exactly which case that is, but I think all of those cases, Shields being one of them, involve ongoing criminal activity. Was Shields, was that the bribery case where there was years of pattern of behavior, pattern of criminal conduct? All of the other cases are of that kind. So your best case, in my judgment, and maybe it's just pride of authorship, is United States v. Zimmerman. Just what I was going to say next. Which the government has relegated to a footnote at page 95 of its brief and mischaracterizes, in my judgment. Page 95 is near the beginning of the government's brief. Well, I understand that. But that's the only mention of Zimmerman, which is the most recent case on virtually identical facts. And the most similar. One piece of solid information about a possession of a picture. In fact, it's better than our case for the government because there the evidence was that the picture was on the computer that was in the location. Here the government's evidence was of an attempt to acquire pictures that were not in the location. So the probable cause for contraband was in here. The government, the probable cause recited in this affidavit at page 15. And his name wasn't even mentioned until page 60, the defendants mentioned. But the only probable cause recited was that four months earlier, Vosburgh made three failed attempts within four minutes to access the number five. That's it. I agree. That's it. I agree. All the rest is about the characteristics of people who collect child pornography or who are pedophiles, and yet there is no evidence, no information that he is such a person. But the holding of Zimmerman, there were two holdings. One was that the good faith exception doesn't apply. But the first one was the warrant application did not contain any information indicating that Zimmerman ever possessed child porn, much less that child porn would have been found on his home on March 19th, 1999. Thus, we agree with Zimmerman, there was no probable cause to search for child porn in his home. Period. But you can't dispute the import, can you, Mr. Goldberger, of the recitation in the affidavit of the tendency of pedophiles to retain a collection because that tendency, that trait, whatever you want to use as a term to describe it, has been recognized by this court and in fact was recited by Chief Judge Sarekha in his opinion in United States v. Harvey. Exactly. The opinion says, we agree with this reasoning, and accordingly we believe the information in the warrant application here was not stale. That immediately follows a discussion of the expert opinion in the affidavit relative to the tendency to retain over time a collection of child porn. Absolutely. And if there were any facts in this affidavit that Mr. Vosburgh had such a collection at any time, was a pedophile, was a collector of child pornography, all of that would be pertinent. But to describe... That he ever possessed. There's not an allegation... That he ever possessed child porn. So far as this affidavit shows, absolutely right. That's the point. You could describe the characteristics of all sorts of people that would create probable cause were the defendant such a person, but you must have some evidence that the defendant is such a person, and that distinguishes this case from all the other cases of this kind that rely on that characteristic, that boilerplate language that the government uses in these warrants. And that is, if you look at those cases, you will see that those people had prior convictions for molesting children, or for possession, or for transmitting, or trading, or they had there was evidence of downloading, or there was a possession, or something else that ties the individual resident of the location to the characteristics. Otherwise the characteristics are completely irrelevant. And very prejudicial. We talked in Zimmerman about boilerplate. We didn't have to rule on boilerplate. But they said the boilerplate provides fact, but no muscle to the affidavit. This boilerplate here, when you talk about child pornographers, five pages of the traits of a child pornographer, under the definition in the affidavit, there's no way he's a child including allegations of how these people who collect act on, and fantasize, and act out. This is tough. This is not just fact. Right. And I would like to think the magistrate isn't going to be prejudiced. But I'm sure that he or she couldn't help it. But it's certainly distracted by 90 some percent of this affidavit that you have to search  That's what's missing. As Judge Barry pointed out, Zimmerman addressed the issue of good faith and resolved that issue against the government. My recollection, and it's been a while since I read the district court's opinion, my recollection is that the district court did not squarely come to grips with the good faith issue, but the issue has been addressed in the briefs. Yes. What do you make of the fact that four magistrate judges, I believe, in the course of all of this have approved this search warrant, or these search warrants? Well, the good faith exception can't be overridden by saying a magistrate issued the warrant. The magistrate issued the warrant by definition, thus we confront a good faith issue. That would be an exception that, or that would be a circumstance that overrules the exception in every case. It's an objective test. This court stands back, thank goodness we have a court of appeals that has the posture that you have for looking at cases, and we have then cases like, analysis like Zimmerman that says, look, just objectively, no reasonable policeman. And the good faith exception looks, as Judge Barry pointed out in the Zimmerman case, looks at the police officer, not the magistrate. It's really not, was the magistrate reasonable? It's about the exclusionary rule, and therefore about the executing officers. On the facts, not on the fact that a magistrate issued it, but on the facts set forth in this affidavit and warrant, is it reasonable to conclude, and there just isn't that reasonable connection here. The good faith exception does have, does not overrule the exclusionary rule. It applies sometimes, and sometimes it doesn't. Again, I think Zimmerman dealt with, you can't lay it off on a magistrate when you come to a magistrate with such a paltry showing. I mean, so it, these issues were very, were dealt with, you may, people may not like the way they were dealt with, but they were dealt with in our most recent precedential opinion, and very similar facts in my judgment, is my opinion. The, if the court, excuse me, in Zimmerman, is it, is there any significance that we're dealing with adult pornography as opposed to child pornography? No, I don't think that the standard of probable cause would be, the warrant, the particular facts in Zimmerman was that the one picture that had supposedly been seen involved an adult and child, there was zero evidence of child pornography, but I don't see how that affects the objective analysis of what constitutes probable cause, no. The, there's no more deference in such cases, and there's no different standard in such cases. If the court is inclined to reverse on, on this case, on this ground, it would be for a new trial, so the court would have to reach, in any event, the sufficiency issue on count one. That always has to come first, so I just, if I may briefly address that the indictment here alleged the possession, the knowing possession, in count one, of certain particular so-called visual depictions on matter that is a certain external hard drive. What is a visual depiction under the statute? Yes, the statute defines a visual depiction as, as including, as including, so what we know from indictment, from statutes that define, use definitions that say include is, in addition to what you would think from ordinary speech, it also means these things. It's a collection of data on the hard drive. Right, right. Because you can't look at the hard drive and see a picture. A human being can't look at the hard drive. When you seize the hard drive, there is no visual image. Visual image is the term that's used for something that our eyes can perceive. A visual depiction is defined, contrary to the way the words are used in ordinary English, that's why we need a statutory definition, as a collection of electronic signals stored on a computer device which are capable of being converted into a visual image. So the, and the statute, in order to make it illegal to possess those electronic signals on a computer device, makes, has a definition for that concept. But, can I cut to the chase on this issue, really, at least to me, because my understanding is Mr. Vosburgh's claim is that trial counsel, his counsel, was essentially ambushed on this issue. Yes. And I'm trying to figure out how counsel was ambushed at trial here. By the bill of particulars? Or by the response? By the response. Well, when the judge ruled that the government's response to the motion for bill of particulars rendered the request moot, rather than denying that request, the district court was ruling that the response was tantamount to what the defense asked for. Otherwise, that request was not moot. What did Mr. Vosburgh's expert from day one prepare to address at trial? She was prepared to address, principally, that the defendant, that there was a reasonable doubt, indeed, it was impossible, that the defendant could be guilty of knowing possession of that which he was accused of possessing. And she was also prepared to discuss all the computer forensics about all of the government's evidence. And she did, in fact, discuss the very issue that you maintain is implicated in a basis of surprise here. Oh, yes. Did she not? Yes. Why was that not raised at the time? My recollection is there is no objection made at any time during trial, including no objection made during or after the closing argument. The evidence was, well, after it was raised in the post-trial motion. It wasn't raised contemporaneously at the closing, that's true. But during trial, there was no objection because the evidence was all relevant. The government's evidence was relevant. They don't have to show only the precise thing charged in the indictment. They can show other things. It would be pretty clear by the time of closing argument if, in fact, their theory has changed, whether it be a constructive amendment or whether it be bivariate, that they've changed their course at least by the time of closing argument. Yes. It would be the closing argument, the government's closing argument made that clear. But there was still no objection. That's true. That's true. But this Court's cases show that a constructive amendment, and here we have a change, my red light's been on for a few seconds. Is that all right? Go ahead. All right. But there's been, the cases are clear that when there is a change in the essential charging terms of the indictment, and here it is, what, in a possession case, what exactly is it that you are accused of knowingly possessing? It has to be a certain thing at a certain time or range of times in a certain place. And if the government cannot change from possession as alleged in the indictment of a particular visual depiction, that is, collection of electronic signals, to something else which the evidence at trial shows would be easier for them to have proved had they charged it. It's not what they charged. They can't get a conviction on that basis. I'll reserve the time for rebuttal. Is there any other questions? Good. Any other questions? Thank you. Thank you. Thank you very much, Mr. Goldberger. Ms. Wolff? Thank you. Good morning. Good morning. May it please the Court, my name is Denise Wolff for the government. I'm going to start my argument with the, responding to Mr. Goldberger's argument on the search warrant, bearing in mind that the standard for a search warrant is probable cause. And that's what we're dealing with here, probable cause. And to start right away with the Zimmerman case. The reason the government put it in a footnote, Judge Barry, is because we believe it is completely distinguishable than the affidavit in this matter. And it's distinguishable because the affidavit in our matter to search 37 State Road, which was the location, was completely based on child pornography. Whereas in Zimmerman, it was based purely on adult pornography. And in Zimmerman, the government conceded there was no probable cause there. This scenario- The concession was the make weight after our holding. But whatever. We know what we said. Here it's completely dealing only with child pornography. That an IP address from this location, 37 State Road, attempted three times to download an image- Yes. I agree with you. That is the probable cause that is recited. And I suggest it's probably there. I mean, it is fair to say that four months earlier, Bosberg, not somebody else, made three failed attempts within four minutes to access information. But there's nothing, nothing that says that he ever had child pornography in his home or any other place. And the government submits, Your Honor, that is correct, but there's no requirement on a probable cause standard for an affidavit that we have to show something more. That he was a pedophile. That he physically- No, we're not saying pedophile. You're trying to show that he is a child pornographer, right? Because that's the first five pages of the boilerplate. We're trying to show, Your Honor, that there is a likelihood, more likely than not, that there's child pornography at that location. Based on the fact that once, four months earlier, he couldn't get any child pornography on the one, the three failed attempts in four minutes. That's right, Your Honor. He never had it. You have no reason, you have nothing, nothing, nothing that he had any child pornography at any time in his home. He attempted to get it. He attempted to get it. I agree. Once. Your Honor, he downloaded it three times. Had it- In four minutes, on one occasion, four months earlier. And that is enough. Downloaded? You see, I have trouble answering a cell phone. That's why I have trouble with the whole first section of Mr. Goldberger's brief. I'm trying to understand this technology in this new world. I do understand some things, though, and I understand there has to be a basis for going in. And don't forget, he didn't just go into his apartment twice. They went to his college. They went to the university, you know, based on these, only on these failed attempts. They were failed in the sense that the images were decrypted. He was successful in downloading them. Now Your Honor, if- Please stay on that. Downloading what? Because I think that's an important point. He downloaded what, the two in 14 and 15? He attempted, he downloaded, Mr. Vosburgh, the user at 37 State Road- There's no dispute about that. The user at 37 State Road downloaded the four-year-old with dad video. When he got it, it was encrypted. It was, for lack of a better word, gobbly goop. That was the word used at trial. He got it. It was encrypted. In your scenario, Your Honor, if there's something more that's needed and we don't believe this is enough, you can never do a search warrant. A search warrant is based on probable cause that there will be evidence at that location. And the fact that he downloaded successfully what he thought was a four-year-old video, hardcore, that is enough for- But the point is, it wasn't, right? It wasn't child pornography. As you have described it, it was gobbly gook. Right, but he didn't know that. How does that suffice as a demonstration that can add to a determination of probable cause? The probable cause must be that there is at this particular residence, which was found and identified by virtue of an IP address and then subsequent staking out by law enforcement officers, et cetera, correct? That's how the place is identified, through the IP address traced back to the device, which happens to be at this residence. But the PC is that at this residence, connected to this particular computer, this particular device. There is child pornography. That's what is at the heart of the criminal offense. So how does this gobbly gook, which apparently cannot as data constitute child pornography, provide anything in the way of PC, that there is child pornography at this place? Because the affidavit, when read as a whole, discusses that people who are trying to get on Ranchi, the hardcore message board, which is not easy to get onto, and the affidavit goes through the steps of how difficult it is. Do you have any evidence, for lack of a better term, any proof, any indicia of probability that at that point in time, there was anything in the nature of child pornography at Mr. Vosburgh's residence, the site that was searched? In the affidavit as a whole, if you're trying, if you're on this message board trying to get that video, there is, a law enforcement officer said there is a likelihood that there will be other child pornography there. That is not the question. Would you answer Judge Smith's question? You're saying if you use Ranchi, then there's a probability that somehow you have derived, obtained, gained possession of child pornography? If you use Ranchi, that there will be evidence. I prefer the term Ranchi. Ranchi may be more accurate for this message board, Your Honor. If you attempt to get, if you're using Ranchi, and you can get on that board, and the affidavit goes through how people who get on Ranchi are likely people who are collectors, have interest in child pornography, and the evidence will be there. There is no allegation, though, that this defendant was a child pornographer, was a collector, ever had one piece of child pornography in his home prior to that. There isn't. And there wasn't in United States v. Shields, where the Third Circuit said that somebody registered to email for websites, that is enough. That is enough on a probable cost standard for law enforcement offers to go in and search. And I'd like to turn for a moment to Good Faith, Your Honor. Good Faith here is most applicable. And the reason is, it's not only the four magistrate judges and one district court judge, but we still have, and it's not briefed, another district court judge in the MERS case, United States v. MERS. We've said in Zubin, you can't lay this off on a magistrate judge. Not when a reasonable officer goes in. Now, don't forget, you had Special Agent Dessy was also one of the executing officers. He was the affiant and one of the executing officers on the search. He knew. He knew what was going on. And that, in Zimmerman, is made very, very clear, particularly when the affiant is an executing officer. Your Honor, and what- That's where you have to get, that's what you have to get around also. And what Agent Dessy knew was the established law at the time that linkage from, under United States v. Harvey in the Third Circuit, a linkage of an IP address to a residence is enough for probable cause. And no- Well, wasn't Harvey a case involving pedophilia? This is a case where there was nothing- I'm sorry. I'm sorry. You know, I miscited. United States v. Perez, which was the Fifth Circuit case. That's a Fifth Circuit case. Fifth Circuit case. Why don't we deal with United States v. Zimmerman in the Third Circuit? Again, that was completely erroneous because it only dealt with- Zimmerman was completely- Adult pornography. It may be completely erroneous. No, no. It was child and adult. There was no child pornography. They were trying to, and we dealt with the child pornography aspect of it right out of the box. And then found the adult pornography, the one depiction of adult pornography was stale. The affidavit in Zimmerman was completely different than the affidavit in Vosburgh. It didn't- The affidavit in Zimmerman only pertained to adult pornography. The affidavit- But they went to search for child and adult. And our affidavit only dealt with child pornography, and that's what they searched for. Your affidavit dealt with failed attempts on one date four months earlier in a four minute period of time to get child pornography. And then it dealt with 15 pages of stuff about child pornographers who, as you define them in the affidavit, are people who produce, sell, trade, or market pornography. That's not any allegation that Vosburgh did that. Then four pages of characteristics of collectors talking about most cherished sexual fantasies acting out. There's no allegation here, and nothing to show that he ever had one piece of pornography, much less a collection. And finally, at page 15, we talk about the three failed, you talk about the three failed attempts. I mean, that's it. Your Honor, that is enough. And that is enough on probable cause. And I'd like to point, Your Honor, to the record on page 108 where the affidavit links. If you're on Ranchi, you're going to collect, you're going to have a bigger collection. And I can say, it says, images, if posting of images on message boards is common among collectors of child pornography in order to share the images and to build a larger collection. Where's the evidence he's a collector? I mean, where is the collector? You see, you're back to collector again. Somebody who uses Ranchi. This probable cause is enough in this situation. Otherwise, the government will never, if requiring more proof that the user is a child pornographer or pedophile, we would never be able to do a search. And this was enough, and the officer, the affiant, Agent Desi, had the good faith, based on the law at the time, the linkage between the IP and the residents. So as a result of four searches, including of LaSalle University or Sinus College and the two of his apartment, you come up with, Exhibit 14 and 15, two depictions of child pornography, correct? That's what you come up with. We came up with a lot more. We came up with destruction of computer equipment, all over that apartment. No, no, I mean in terms of the depictions, there were two. That's right, 14A, 14 and 14. 14A and 15. 14 and 15. And then you come in, that's it, I mean you come up with the two depictions. As well as? As well as the evidence of attempted destruction, which, you know, the jury could defend that. But then we go to trial, and what you come in with are G16, 30 Lola Chan pictures, which you describe as exceedingly lurid, but not child porn. And Government 17A and B, 46 non-porn images of little girls that you call child erotica. And with Lola Chan, you not only had the 30 exceedingly lewd pictures, but Agent Dessy testified there were hundreds more. Now Mr. Vosburgh, in my judgment, doesn't deserve a medal, believe me. But this stuff was admitted to show that he possessed the two visual depictions, correct? As well as consciousness of guilt for destroying the evidence. For the two pictures. Well the consciousness of guilt as to the two pictures. And his destruction of- The knowledge that these were the two pictures that he had, that he intended to and had them, right? That's what the destruction of it. But these hundreds, this testimony and this evidence of hundreds of lewd, lurid things, to prove this, to show he's a bad guy, that's what it was, isn't it? No Your Honor, these images, these images, the Lola Chan images were to show, to go against what his key defense was, which was misidentity on the ranch sheet, as well as lack of knowledge and lack of intent. So this was to show that his defense, it goes to the heart of his defense, that he was interested in young girls. And it goes to show why he destroyed all his evidence while the FBI was knocking on the door. And although I don't know that this court has dealt with that theory of admissibility in a presidential opinion, you do have authority from several other courts of appeals suggesting that such a logical inference can be drawn. I think my, I don't suggest that that can't be. I'm just, it just seems maybe so excessive. It's kind of like, you know, even when you come for sentencing, you've got to give him, you can't give him a break. No, no, no. We had two images, remember Judge. If I may respond to Judge Barry, then, and take additional time to just make an argument on the constructive amendment. It wasn't excessive. The manner, a lot of the evidence was cut down that the government sought to get in. The lowly Chan images were not pornographic. They were not naked. They did not show genitalia. They were presented in a method that was very quick, and there was an appropriate instruction by the court. Well, you described them as exceedingly lewd. That's the phrase you used. But not unduly prejudicial, Your Honor, at all. And not when in comparison to the four-year-old video, as well as the 14 and 15. If I may just take a moment to respond to the constructive amendment. Yes, go ahead. Thank you. Mr. Goldberger's argument here on appeal rests entirely on a construct that there was a technical difference between the image, the picture in the JPEG, and the picture in the ThumbsDB. And that somehow these contain different data, and that the government charged one and not the other. And that is a completely post-trial appellate legal invention. Well, he's conceded that there was no contemporaneous objection made at any point during the trial. And that's why it fails on plain error. And the defense counsel, the trial counsel, knew exactly what was charged, and that the image in the ThumbsDB were the same image. Were the visual depictions the same? Yes, Your Honor. The 14 and 15 were different. And was that stated in the beginning, from the beginning? Yes, it was. He knew this in the Bill of Particulars, as well as the Rule 16 letter. And also the key here is that the defense expert, Dr. Mercury, was entirely aware of it as evidenced in her report, the body of the expert report, the conclusion, as well as her demonstration. Their whole argument was the JPEGs never existed, and the ThumbsDB were inaccessible. They knew that, and the government's argument was the JPEGs existed, and the ThumbsDB were proof of that. This entire argument is just a creative invention on appeal. And there was no ambush at trial. There was no shock. Let me put this in the simplest terms for someone of my generation. Isn't it the same stuff in a different form? Yes, Your Honor. It's the same image. The distinction is the location, not the image. And I just want to close on this point. If Mr. Goldberger gets his way on this, and the government is then forced to specify in indictments the location of the images on the computer, then there will be very unworkable, cumbersome indictments in the future involving hundreds, if not thousands, of counts. What the law is as now, which mirrors the statute, is you charge the matter, which here was the external hard drive. And that matter contained visual depictions. You do not, and should not, have to specify in an indictment that it came from the cache, the ThumbsDB, or the JPEG. If I understand this correctly, the ThumbsDB was what was found on the external hard drive. Is that correct? That is correct, Your Honor. And so as a theory at trial, as an evidentiary theory, what was found on ThumbsDB was essentially circumstantial evidence that these visual depictions had previously been in JPEG. Five days earlier. And what it boiled down to was a battle- So it's really just a, I mean, it's an evidentiary question. Evidentiary, and it's an expert- Which is not something that you would have to set out in an indictment. That's right, Your Honor. And again, it was his expert, the defense expert, said something different than the government expert. And the jury heard all, assessed all, and rendered their independent verdict. And they were capable of doing that, assessing the various testimony before them. Let me go back to something that you said in, or started to say in the beginning. What was he successful in doing? You've used the term download, you've been told that all he did was make an attempt. Tell me exactly what he did, what went on the computer, because, and if the ThumbsDB file was on the external hard drive, did it have to have been copied from another source or come from another source? That is, how was it downloaded? I'll start with the latter. The ThumbsDB on the external hard drive, the government expert testified a half a dozen times at trial on cross and direct that in order to be on the ThumbsDB, the JPEG, the JPEG had to have existed, had to have existed. And he testified, he couldn't tell how it came to the external hard drive for sure because the evidence was destroyed, a lot of evidence was destroyed, but he testified it got there from some over-act, affirmative act, either downloading from the internet, an email, or transferring it from a CD, some other source. So the government expert was clear and repetitive throughout his testimony that that's how, in order to get in the ThumbsDB, it had to have existed. And the reason we know it existed is because it was in the JAP111 directory five days earlier, and he had evidence on that. That went against the defense expert who said that it did not exist earlier. But there was enough in the record that the defense, that the government expert's testimony, that the fact that it was possessed and previously existed, that supports the verdict. Hope I addressed Your Honor's question. With respect to the attempt, the only reason it was charged as attempted child pornography, and that's the, there's a legal reason, and then what actually happened. The legal reason it was charged with attempted child pornography is because when agent looters, the FBI can't put real pornography video on, they're not allowed. So when it was downloaded, it was encrypted, it was. That's count two? This is the Ranchi count, yes, count two. Move to that. So that's why it's attempted child pornography. However, sitting from the user's perspective at 37 State Road, that user was successful in downloading that video in the terms of he got on it, he understood it, he. I don't understand. Downloading the video, the Ranchi video, he downloaded it. He, from his perspective, the steps. I don't see that. I don't see how you call it an attempt if he actually downloaded it. Because it seems to me that if you download somebody, you have it, you possess it. His steps to download it were successful. The end result was not child pornography, but that's an attempt. Isn't there something of an internal inconsistency in your arguments though? Your argument on this issue and your argument on the probable cause issue? Maybe I'm oversimplifying, but what I understood you to just say is that with respect to count two, the attempt charge, it is an attempt because he downloaded what he believed to be, what he expected to be, what he hoped would be child pornography. What he ended up with was what you earlier characterized as gobbledygook because that's precisely what the agent intended to transmit to him. Is that right? Not child pornography. The agent was not going to send him child porn images. Right, but it goes to the user's intent and knowledge. I understand that. But the consequence of that action was that it was merely an attempt. He couldn't complete it because what he downloaded was not child pornography. That's why he was charged. I understand that. That's why he's charged with an attempt. But the result of that is that he gets gobbledygook, not child pornography. He doesn't have child porn as a result of that internet transaction for purposes of giving you probable cause and you have nothing early for purposes of a demonstration of probable cause that is in fact and law child pornography within his possession. But it's the intent that gives us the probable cause. No, no, no. I understand. But Zimmerman and our cases require more than intent for probable cause. We disagree that the probable standard is enough. That's why we get paid the big bucks to make these decisions. Is your paycheck different than mine and Judge Sarekhi's? It's surely different than mine. Thank you. Thank you. Good. Any other questions? Thank you, Ms. Wolfe. Mr. Goldberger. Yes. Judge Barry, I deeply regret that I have concluded that it is absolutely essential to master the technology to understand this case because that's where I was four and five months ago. I also didn't know this vocabulary, but you must understand the vocabulary in order to get the case right. I'm trying. Right. I'm trying. That is, the visual depiction as defined in the statute is only a certain set of electronic signals which are necessarily, by the way they're defined in the statute, in a certain place on a certain piece of computer equipment. That's what the statute defines. It has to be that way because that thing, the visual image which could be resolved from that so-called depiction, must be child pornography. So you have to know, have to be able to identify the computer bytes so that you can then forensically resolve them to an image and test that against the definition of child pornography. It's certainly not true that you'd have gigantic indictments with multiple counts because the statute prohibits the possession of matter containing one or more visual depictions. It doesn't matter how many there are or where they are. It's one count for possession of the hard drive. That's the crime. Right. So, but you need to know what it is exactly on the hard drive that is said to constitute the crime. And you can't say it's something else that's similar in some ways. The example I used in my brief was reproduction in a newspaper of a famous painting or the painting itself. They are the same visual image in a way, but they are not the same thing. And the statute defines the thing as the crime. It can't be a different picture of the same thing. The, just on back to Shields and the probable cause for one second, I apologize for forgetting which case that was. That is the other child pornography case, the one that, the guy that joined the group called Candyman. And he had a child pornographic signaling email address that was already known before the affidavit was written. And he had participated in multiple exchanges of emails. So, that's a whole different level of probable cause. But, but no, no suggestion of actual possession or previous possession there either, was there? Right. There's no one fact that's a sine qua non. It's all the facts. But here, none of the facts that could make it sufficient are there. The, the fact that a person who is a child pornography collector would use a site such as Ranchi. Does not mean that everyone who attempts once to get something from Ranchi is a child pornography collector and has been, so that there would be material on their computer to be found. The issues are very well, you know, I'm sure, developed here. Ms. Goldberg, you said earlier that if we were to reverse the suppression denial, you would get a new trial. Yes. In Zimmerman, we reversed the denial of the suppression motion, and we vacated the conviction. You vacate the conviction, but the government is left with the choice to proceed with its available and admissible evidence. It's always the government's choice to proceed after a reversal. I don't mean that. I doubt there would be a new trial, because there wouldn't be sufficient evidence to proceed. Because you would have lost the two, the two visual depictions by virtue of the suppression motion. That's right. Oh, all the, all the evidence seized. Absolutely. But, I don't know, just as a technical matter, you can't say that the case is dismissed. The government has to dismiss the case for lack of ability to proceed. As to count one, or as to count one and count two? I don't want to misunderstand your question. The reference to having lost the evidence and what the government could proceed with. The, well, the count alleging an attempt, they could, the government has a choice to proceed to evaluate its own evidence. The evidence which is the corpus delecti of count one would be gone. The corpus delecti of count two would not be gone. The question is whether they could prove that case. That's up to the government. Before you sit down, could you tell me again how you distinguish shields from the situation here? Yes. There was information specific to that targeted individual who was the resident of the place to be searched. And that was, because that, that was not an access to a bulletin board. Here we go with the technology again. That guy joined a group that exchanged emails. So they had captured his email address. And his email address, what was it? Lolita something. It was, you know, a little love. It was some, I, the email address basically said, I like child pornography. That's what, you know, it was an admission, his email address. And the agent also said in the affidavit, although there turned out to be a Frank's issue about this, that anyone who joined the group would have received and exchanged all of the pornography that other members of the group traded with one another. Any other questions? Good. Mr. Goldberger, thank you very much. Case was very well argued. We will take the matter under advisement.